UNITED STATES DISTRICT COURT
FOR THE

DISTRICT OF MASSACHUSETTS

SUFFOLK, ss.

FILED
IN CLERKS OFFICE

2011 DEC -7 P 2: 49

U.S. DIST...  COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| SHEILA PALLIS, | ) | Case No.: |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | |
| HOLY SEE, (State of the Vatican City),  Its | ) | |
| Instrumentalities and/or Agents - Does 1-10; | ) | |
| ARCHDIOCESE OF BOSTON, OFFICE FOR | ) | **JURY TRIAL DEMANDED** |
| PASTORAL SUPPORT AND OUTREACH OF | ) | |
| THE ARCHDIOCESE OF BOSTON, | ) | |
| JUNE CHIN, ROBERT H. ERICSON, | ) | |
| DEBORA LAMONICA, | ) | |
| ANTHONY J. LAMONICA, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

Plaintiff, for causes of action against Defendants, alleges that:

## PARTIES

1.   Sheila Pallis is an adult female citizen of the State of Massachusetts. She resides at 479 Higgins Crowell Road in West Yarmouth, Massachusetts, 02673.

2.   At all times material, Defendant Holy See (State of the Vatican City), (hereinafter "Holy See") is a foreign country.   The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1-10 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.   When the true names and capacities of said Defendants have been ascertained, Plaintiff will seek leave of court to amend this complaint to allege the true

names and capacities.  Plaintiff is informed and believes and based thereon alleges that each of

the Defendants, as an agent and/or instrumentality of the Defendant Holy See, designated as a

Doe herein is liable in some manner for the acts, occurrences and omissions hereinafter alleged.

Any reference or allegation against Defendant Holy See includes Does 1 through 10.

      3.     Defendant Holy See is the ecclesiastical, governmental, and administrative capital

of the Roman Catholic Church.    Defendant Holy See is the composite of the authority,

jurisdiction, and sovereignty vested in the Pope and his delegated advisors to direct the

worldwide Roman Catholic Church.    Defendant Holy See has unqualified power over the

Catholic Church including each and every individual and section of the church.  Defendant Holy

See directs, supervises, supports, promotes and engages in providing religious and pastoral

guidance, education and counseling services to Roman Catholics worldwide in exchange for all

or a portion of the revenues derived from its members for these services.  The Holy See engages

in these activities through its agents, cardinals, bishops and clergy, including religious order

priests, brothers and sisters, who engage in pastoral work under the authority of its bishop.  The

Holy See is supported through the contributions of the faithful which are received through

donations from dioceses. Defendant Holy See promotes and safeguards the morals and standards

of conduct of the clergy of the catholic church.  Defendant Holy See does this by and through its

agents and instrumentalities, including the Congregation for the Clergy and the Congregation for

Religious both delegated by the Pope and acting on his behalf.  It creates, divides and re-aligns

dioceses, archdioceses and ecclesiastical provinces.  It also gives final approval to the creation,

division or suppression of provinces of religious orders.   Defendant Holy See promotes the

sacred liturgy, directs and coordinates the spreading of its faith and other things necessary to

2

promote the faith. It creates, appoints, assigns and re-assigns bishops, superiors of religious orders, and through the bishops and superiors of religious orders has the power to directly assign and remove individual clergy. All bishops, clergy, and priests, including religious order priests, vow to show respect and obedience to the Pope and their bishop. Defendant Holy See also examines and is responsible for the work and discipline and all those things which concern bishops, superiors of religious orders, priests and deacons of the religious clergy. In furtherance of this duty, Defendant Holy See requires bishops to file a report, on a regular basis, outlining the status of, and any problems with, clergy. Defendant Holy See promulgates and enforces the laws and regulations regarding the education, training and standards of conduct and discipline for its members and those who serve in the governmental, administrative, judicial, educational and pastoral workings of the Catholic church worldwide. Defendant Holy See is also directly responsible for removing superiors of religious orders, bishops, archbishops and cardinals from service and/or making them ineligible for positions of leadership in the various divisions and offices of the Catholic Church.

4.    At all times material, Defendant Archdiocese of Boston in Massachusetts, was a citizen of the state of Massachusetts in that it is a corporation incorporated under the laws of the state of Massachusetts and having its principal place of business in the state of Massachusetts. At all times material, the Roman Catholic Archbishop of Boston in Massachusetts, and successors, was a citizen of the state of Massachusetts in that it is a corporation incorporated under the laws of the state of Massachusetts and having its principal place of business in the state of Massachusetts (hereinafter, collectively the "Archdiocese"). Defendant Archdiocese provided pastoral services to Plaintiff through its Office for Pastoral Support and Outreach. (Exhibit One)

5.   At all times material, Defendant June Chin was a citizen of the state of Massachusetts. June Chin, LICSW, Associate Director for the Office for Pastoral Support and Outreach of the Archdiocese of Boston, principal office located at 25 Braintree Hill Park, Suite 300, Braintree, MA 02184-3890. Defendant June Chin provided pastoral services to Plaintiff. (Exhibit Five)

6.   At all times material, Defendant Robert H. Ericson, LICSW, was a citizen of the state of Massachusetts.    Defendant Robert H. Ericson provided counseling services to Plaintiff. Defendant's principal office is located at 900 Route 134, South Dennis, MA 02660.   Defendant received payment by check from the Roman Catholic Archbishop of Boston for services rendered to Plaintiff.  (Exhibit Three)

7.   At all times material, Defendant Debora LaMonica, MD, principal office located at 1200 Route 28, South Yarmouth, MA 02664, was a citizen of the state of Massachusetts. Defendant Debora La Monica provided psychiatric services to Plaintiff.   Defendant received payment by check from the Roman Catholic Archbishop of Boston.  (Exhibit Four)

8.   At all times material, Defendant, Anthony J. LaMonica, pharmacist, principal office located at 378 Broadway, Everett, MA 02149, was a citizen of the state of Massachusetts. Defendant Anthony J. LaMonica supplied medication through the US Postal Service to Plaintiff. Plaintiff has no information on how Anthony J. LaMonica was paid for services rendered.

### JURISDICTION AND VENUE

9.   This court has subject matter jurisdiction pursuant to 28 U. S. C. §1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the Plaintiff herein, a citizen of the state of Massachusetts, is diverse in state citizenship from Defendants, citizens of the state of Massachusetts and a foreign country.

10.   This Court has personal jurisdiction over the Defendants because a tort was committed by the Defendants against Plaintiff in this district.  This Court has jurisdiction over the Defendant Holy See and/or Does 1-10 in that the actions that the Plaintiff complains of involve an activity for which the law provides an exception to sovereign immunity.

11.   Venue is proper in this district pursuant to 28 U. S. C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred within this district.

### FACTS

12.   In early May of 2005 the Plaintiff visited the Archdiocese of Boston's online website (Exhibit One). The Plaintiff first became aware of the services the Archdiocese provided for adult survivors of childhood sexual abuse by clergy, when she visited their website.

13.   The Office of Pastoral Support and Outreach, as described on its website, is "For adults who are bringing forward a complaint of abuse that occurred when they were under 18. The Office of Pastoral Support and Outreach completes a form provided by the Attorney General's office.  This form (FORM D) is sent to the AG's office and states the basic facts, location, date, nature of abuse and the name of the perpetrator."

14.   The Plaintiff telephoned the Office of Pastoral Support and Outreach and made an appointment to meet with Defendant June Chin.

15.   The Plaintiff read the statement -- "For adults who are bringing forward a complaint of abuse ... the Office of Pastoral Support and Outreach completes a form provided by the Attorney General's office."

16.   To a reasonable person the word "COMPLAINT" used in the context of this statement does not mean an expression of discontent or regret.   To a reasonable person the word

"COMPLAINT" used in the context of this statement means a document sworn to by a victim or police officer that sets forth a criminal violation and that serves as the charging instrument by which charges are filed and judicial proceedings commenced against a defendant.

17.   The Plaintiff withheld no information and had come specifically to the Archdiocese of Boston to file what she believed was a criminal complaint form.

18.   On May 17, 2005, the Plaintiff met with Defendant June Chin, LICSW, Director of the Office of Pastoral Support and Outreach of the Archdiocese of Boston.  Since 2002, June Chin in her capacity as a social worker completed FORM D (s) for the Office of Pastoral Support and Outreach.

19.   FORM D does not require the victim to sign the form nor is there a signature line allocated on FORM D for the victim's signature.

20.   Defendant Chin gave Plaintiff an Initial Victim Report to complete. (Exhibit Two) The Plaintiff completed and signed the report in her own handwriting and then submitted the completed Initial Victim Report to June Chin on May 17, 2005.

21.   Defendant Chin made an offer consisting of a promise to assist the Plaintiff in reporting the allegations against Father Albert Stankard to the District Attorney and the Attorney General.

22.   Defendant Chin filled out FORM D in her own handwriting. Chin hand wrote the name Jane Doe and then placed two lines to crossed out the sections requesting the current location/ address, the data on individual's male parent or guardian and the data on individual's female parent or guardian. Defendant Chin signed FORM D.   FORM D is entitled, COMMONWEALTH OF MASSACHUSETTS SPECIAL FORM FOR CLERGY REPORTING

6

OF SUSPECTED ABUSE OF CHILDREN. WHO ARE NOW AGE 18 OR OLDER TO MASSACHUSETTS DISTRICT ATTORNEYS. (Exhibit Five)

23.    The intent of the Plaintiff when she signed the Initial Victim Report was to accept the Pastoral Support and Outreach's offer to assist in the reporting of allegations against Albert Stankard to the District Attorney and the Attorney General.    By offering the Plaintiff pastoral care services in the form of assisting in reporting the Plaintiff's allegations against Albert Stankard, the Defendant Archdiocese of Boston intended to perpetuate good relations with the Plaintiff.

24.    By promising services to the Plaintiff in exchange for the Plaintiff's consent to accept these services, the Archdiocese obtained an advantageous association. This advantageous association assisted in restoring the trust of the faithful in their pastors. This advantageous association was the consideration the Plaintiff offered -- an intangible asset that may be defined as goodwill.

25.    On May 17, 2005, Defendant Chin stated that the Plaintiff would be invited to social gatherings and picnics with other survivors of clergy sexual abuse. The Plaintiff during the year of 2005 through 2009 and to the present day, has not received an invitation to any of the promised social gatherings or picnics.

26.    Chin assumed the role of counsellor to the Plaintiff and agreed to act on her behalf. Chin characterized her objectives in a false and misleading manner as a means of gaining the Plaintiff's trust and acquiescence.    With full knowledge of the enormous emotional, psychological and spiritual duress the Plaintiff was suffering, Chin continued to establish a relationship with the Plaintiff. This relationship had no provision for the Plaintiff's state of mind

and the Plaintiff's ability to make sound judgements about the course of action that needed to be taken in order to file a criminal complaint against Father Albert Stankard. Defendant Chin used her position of authority and trust to acquire the Plaintiff's agreement to accept pastoral support from the Archdiocese of Boston.

27.     Plaintiff stated to June Chin on May 17, 2005, that she understood her recent hospitalization was due to the severe sexual abuse Father Albert Stankard, had forced her to endure as a child.   Defendant June Chin stated that the Roman Catholic Archdiocese may pay for Plaintiff's therapy and medication. Chin assumed the role of counsellor to the Plaintiff and agreed to act on her behalf by requesting payment for Plaintiff's medical bills from the Archdiocese of Boston. Chin characterized her objectives in a false and misleading manner as a means of gaining the Plaintiff's trust and acquiescence.

28.     Several days after the May 17, 2005, meeting with Defendant Chin, the Plaintiff received from Chin by mail a handwritten note written by Chin (Exhibit Six), along with documents requesting authorization to release medical records (Exhibit Seven). On May 23, 2005, the Plaintiff signed the authorizations, an action the Plaintiff would not have otherwise taken if Defendant Chin had not stated in the handwritten note -- "this will help with the investigation."

29.     After her stay at Cape Cod Hospital in 2005, she went immediately to the Pastoral Support and Outreach of the Archdiocese of Boston.   Therefore the three year statue of limitations began to run in May of 2005.  In May 2008 her three year statue of limitations to bring a civil case within the Commonwealth of Massachusetts against Father Albert Stankard -- ran out.  Koe v. Mercer, 450 Mass. 97 (2007).  Once a plaintiff knows of the connection, the

statute of limitations begins to run, even if he does not know the "full extent or nature of [the] injury."

30.     Sometime during the year 2005 and after May 2005, Plaintiff stated to Defendant Debora LaMonica that Plaintiff was experiencing numerous memories from her childhood that were disturbing.  Plaintiff stated that Father Albert Stankard had penetrated her vagina with a crucifix when she was a child and that he had penetrated her rectum with a wooden object. Defendant LaMonica recommended Defendant Robert H. Ericson, LICSW to Plaintiff. LaMonica stated that Ericson knew how to handle "flashbacks."

31.     Plaintiff and her husband, Mark Pallis were asked to attend a second meeting held by the Office for Pastoral Support and Outreach of the Archdiocese of Boston.  Defendant Ericson stated that no lawyers were necessary at this second meeting.   The meeting was held at Defendant Ericson's office in Chatham, MA.   Attending the second meeting were the Plaintiff, her husband, a priest, a female investigator and Defendant Ericson.

32.     At this second meeting, the Archdiocese of Boston found the Plaintiff's allegations against Father Albert Stankard credible enough to agree to pay for Plaintiff's therapy provided by Defendant Ericson and to agree to pay the fees for the Plaintiff's psychiatric services provided by Defendant Debora LaMonica, MD.        The Defendant agreed to pay the fees for the Plaintiff's pharmaceutical medication provided by Defendant Anthony J. LaMonica.

33.     The investigator stated that she would look into the allegations the Plaintiff made regarding Father Albert Stankard. The Plaintiff requested the minutes from this second meeting. The meeting minutes have never been released to the Plaintiff.

34.    Six months after the second meeting was held, Defendant Ericson told Plaintiff during a scheduled therapy session, that Plaintiff was the lone accuser of Father Albert Stankard. Plaintiff inquired about the investigation. Defendant Ericson stated that Father Stankard did not admit to it.   Plaintiff wanted to contact the investigator.   Defendant Ericson stated that the investigator no longer worked for them.   Defendant Ericson stated that Pastoral Support would continue to pay for her therapy.   The Plaintiff then contacted the Pastoral Support office by telephone.   She spoke with Defendant Chin.   Chin was short with the Plaintiff, during the phone conversation.   Chin stated the investigation is over and that Father Albert Stankard didn't admit to it.

35.    At the following scheduled therapy session Defendant Ericson stated to the Plaintiff that Pastoral Support had a problem with how the Plaintiff behaved toward them.   Defendant stated that Pastoral Support and Outreach no longer wishes to speak with you (the Plaintiff).   She was not to call the Pastoral Support office. Defendant Ericson said that the Plaintiff should speak with him and he would speak to Pastoral Support on her behalf.   Plaintiff told Defendant Ericson that Father Albert Stankard was getting away with a crime and she was afraid that he would harm other children.   Defendant made no comment regarding Plaintiff 's statement and was not fully engaged with the Plaintiff's concerns.

36.    From 2005 through 2009, no treatment goals and objectives were established between the Plaintiff and the Defendant Ericson.    This is in violation of 258 Code of Massachusetts Regulations 22.0, (1) (c) Establishment of Clinical Treatment Record.

37.    In May of 2009, Plaintiff became disturbed by the dosage as well as the side effects of the medication she was prescribed by Defendant Debora LaMonica, MD.    She told both

Defendant LaMonica and Defendant Ericson that she believed she was over medicated.  She told

both Defendants that she was greatly disturbed that nothing was being done about Father Albert

Stankard.

38.    Plaintiff received her prescription medication through the mail from Anthony J.

LaMonica.

39.    On May 13, 2009, Plaintiff called and then visited the medical records department at

Cape Cod Hospital.  Plaintiff requested her medical record for her April 2005 inpatient stay at

Cape Cod Hospital's Psychiatric Center.  She received the form, Authorization For Disclosure of

Medical Record Information and completed the form with the required information (Exhibit

Seven). The Plaintiff wrote that the purpose of her request was for continuing care, personal use,

legal, and validation.  The Medical Records Department faxed the authorization for release form

to Defendant LaMonica for her approval.

40.    Plaintiff stated she had a legal right to her medical records.  A security guard was

called.  The guard squeezed Plaintiff's arm and then pushed her against the wall.  Plaintiff told

the guard, "Get your paws off me."  Someone summoned the Barnstable Police Department.  The

Police stated that they could charge the Plaintiff with trespassing.  Plaintiff was then escorted to

the parking lot.  She was told not to return.

41.    On May 13, 2009, Plaintiff went to Defendant LaMonica's office and found that the

office was closed and would be opened again on Thursday, May 14 at 1:00 PM.   Plaintiff

returned on Thursday and spoke with Arleen, the receptionist.   She stated that she had come to

pick up her medical records. Arleen stated that the Defendant LaMonica was not available.  The

receptionist told Plaintiff to return on May 15 and then the Defendant LaMonica and the Plaintiff would both sit down and review her medical records.

42.   On May 15, 2009, Plaintiff returned to Defendant LaMonica's office.  Defendant refused to review medical records.  Plaintiff drove home.

43.   On May 15, 2009, the Plaintiff was home.  She was walking with her dog on a trail in a wooded area behind her home, which is a part of her land.  Returning from the walk she saw a police officer who said, "You are running away."  The Plaintiff said she was not running away, she was walking her dog.  As she approached her home she saw two police cars, an emergency medical team unit, a fire truck and an ambulance.  She walked into her home and the police officer stated that he had a piece of paper that said she must go to Cape Cod Hospital.  The Plaintiff stated that she didn't want to go to the hospital.

44.   Plaintiff made a telephone call to Carol Streiff, an attorney from the American Civil Liberties Union and asked about her rights.  Plaintiff offered no resistance and was taken to the hospital by ambulance.   The Defendant Ericson and Defendant LaMonica attempted to hospitalize the Plaintiff. For five hours the Plaintiff was held on a gurney without restraints in the Emergency Room of Cape Cod Hospital. The Plaintiff was released and took a taxi home.

45.   In July or June of 2009 Plaintiff called Defendant Chin at her office.  Plaintiff was emotionally upset, she stated that nothing was ever done about Father Albert Stankard.  Plaintiff vividly described to Defendant Chin how Father Albert Stankard had repeatedly abused her.

46.   Plaintiff attended her scheduled appointment at Defendant Ericson's office soon after her telephone conversation with Defendant Chin.  Ericson stated that the Archdiocese of Boston would soon discontinue making payments to him for Plaintiff's care.  Defendant Ericson stated

12

that he was attempting to have the Archdiocese of Boston continue payment until the end of 2009.  Last payment to Defendant Ericson was made in December 2009.   From 2005 through 2009, the Plaintiff never received from Defendant Ericson documentation regarding her confidentiality rights. This was in violation of 258 Code of Massachusetts Regulations 22.02 (1) Establishment of Clinical Treatment Record (K) Documentation that client has been informed of his or her confidentiality rights as required by, 258 CMR 22.05.

     47.     From 2005 through 2009, no treatment goals and objectives were established by Plaintiff and Defendant Ericson.   This was in violation of 258 Code of Massachusetts Regulations 22.00 1 (c) Establishment of Clinical Treatment Record.  The Plaintiff sent a letter by certified mail to Defendant Ericson requesting patient's records as well as billing records. Plaintiff received incomplete records with years of billing omitted, and no copy of the minutes from the second meeting with the Archdiocese held at Defendant Ericson's office.  This was in violation of 258 Code of Massachusetts Regulations 22.02 (1) Establishment   of Clinical Treatment Record (j) Documentation of any fees charged, payments obtained, and other relevant billing and/or insurance information.

     48.     From 2005 through 2009 Defendant Ericson kept no records of Plaintiff's statements regarding individuals involved in crimes against her.   Defendant Ericson breached his duty to advise and his duty to warn the Plaintiff of his lengthy relationship as a therapist paid by the Roman Catholic Church.

     49.     The Catholic Church discontinued payment for Defendant Debora LaMonica on October 2010. This ended the Plaintiff's association with Pastoral Support and Outreach of the Archdiocese of Boston.

50.   From 2005 to 2011, the attorney general's office never contacted the Plaintiff

regarding their receipt of Form D.  Form D was never processed as a criminal complaint nor did

it follow the procedures allocated by the attorney general's office for criminal complaints.

51.   The Criminal Bureau Policies and Procedures Manual, written by Scott Harshbarger,

Attorney General of the Commonwealth of Massachusetts, July 1, 1993, states:

"The Criminal Bureau maintains electronic and hard copy files of all referrals, requests for
investigation, requests for information and other correspondence -- whether received by mail,
telephone or in person and from every source outside and within the Office of the Attorney
General.  All referrals and requests receive a response (except those which are anonymous in
origin)."

52.   The Plaintiff attempted  to find out if FORM D was filed with the Attorney General's

office by the Pastoral Support and Outreach Center of the Archdiocese of Boston.  On May 30,

2011, the Plaintiff sent a letter to Martha Coakley's office requesting a copy of FORM D for her

records.   (Exhibit Eight-A) The Plaintiff sent a letter on September 15, 2011, requesting an

appeal to the Public Records Division of the Secretary of the Commonwealth.  (Exhibit Eight-B)


53.   The Defendants willfully distorted the truth for their own self interests and their

actions destroyed the Plaintiff's ability to seek adequate care for her psychological injuries, her

financial injuries, her emotional injuries and her social injuries.  (Exhibit Nine) Failing to inform

her of her rights as a patient or her legal rights as a victim of a violent crime was not just an

oversight, it was a deliberate action taken with intent to do harm.  As a direct result of the abuse

by the Defendants the Plaintiff has suffered and will continue to suffer severe duress.

14

54.   The procedures recommended by the National Organization of Victim Assistance, a non-governmental organization (NGO) of the United Nations, are in stark contrast to the procedures provided by the Office for Pastoral Support and Outreach of the Archdiocese of Boston. (Exhibit Nine)

## STATEMENT OF CLAIMS

## COUNT I: VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) AGAINST DEFENDANT ARCHDIOCESE OF BOSTON FOR THE ACTS OF DEFENDANTS

55.   Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 54 of this complaint as if set forth in full herein.   " The Manner of Proceeding in Cases of Solicitation" ( The Vatican Press, 1962), referred to a "Crimen Sollicitationis" (Exhibit Ten) Holy See's directives prohibit the reporting of child sexual abuse to law enforcement authorities, constitute an act or acts of concealment or misleading or obstructive conduct under statutory law, common law, and customary international law.

56.   The Defendants engaged in a scheme to intentionally inflict emotional distress to the Plaintiff.  The Defendants perpetuated their scheme to cause enormous emotional distress and psychological distress to the Plaintiff thereby rendering the Plaintiff incapable of proceeding with a legal action against Father Albert Stankard promptly.

57.   The successful cover-up of the abuse resulted in the expiration of the statue of limitations.

58.   The Defendants understood the Plaintiff endured childhood sexual trauma and that this trauma experience rendered the Plaintiff an easy target for re-victimization.

15

59.   The re-traumatization of the Plaintiff through the actions of all the Defendants has and will have sustained damaging effects on the emotional well being of the Plaintiff.

60.   By their actions the Defendants prevented the Plaintiff from seeking adequate medical care for her psychological injuries from parties unaffiliated with the Archdiocese.   The Plaintiff has suffered harm and damages for which the Defendants are liable.

**COUNT II: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST, DEFENDANTS HOLY SEE, ARCHDIOCESE OF BOSTON, OFFICE OF PASTORAL SUPPORT AND OUTREACH OF THE ARCHDIOCESE OF BOSTON, JUNE CHIN, ROBERT H. ERICSON, DEBORA LAMONICA AND ANTHONY J. LAMONICA.**

Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 60 of this complaint as if set forth in full herein.

61.   Each Defendant intentionally caused severe emotional harm to Plaintiff.   Each Defendant's actions and inactions were extreme and outrageous. Plaintiff suffered a severe disabling response  to each Defendant's conduct.

62.   Defendant Boston Archdiocese by and through its agents, servants and employees, knew or reasonably should have known of the Attorney General of the Commonwealth of Massachusetts, Thomas F. Reilly's 91 page report published in July 2003, *The Sexual Abuse of Children in the Roman Catholic Archdiocese of Boston.*   Warnings are clearly noted on page 18 of this report and special note of a specific warning made by the Independent Victim's Assistance Board and the Attorney General, should have been heeded. (Exhibit Eleven) Despite such knowledge, Defendant negligently maintained a website (Exhibit One).   Defendant Boston

16

Archdiocese negligently retained the services of the Office for Pastoral Support and Outreach and failed to notify survivors of these warnings including but not limited to the Plaintiff.

63.    The Archdiocese of Boston has chosen to advertise on their website a message that survivors of clergy abuse are likely to believe reflects the opinion of the attorney general of the Commonwealth of Massachusetts. The Commonwealth of Massachusetts lent their name to Form D, a form which for all practical purposes is a mandatory reporting form.  Yet on the Archdiocese of Boston's website it is presented in a manner that would lead a survivor of clergy abuse to believe that Form D is a criminal complaint form.

64.    The Commonwealth of Massachusetts must adhere to the first amendment and the fourteenth amendment of the United States Constitution, which mandate that neither a state nor the Federal Government can participate in the affairs of any religious organization or groups, openly or secretly.   The Commonwealth of Massachusetts' claim that Form D is a criminal complaint form, would be unconstitutional.  Form D is a mandatory reporting form.

**COUNT III. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

65.    Each Defendant's conduct fell below any standard of care relating to adults that were sexually abused as children.   Plaintiff suffered severe emotional distress as a result of each Defendant's actions. Each Defendant's conduct was a cause in fact of this severe emotional distress.

**COUNT IV: FRAUD AGAINST DEFENDANTS ARCHDIOCESE OF BOSTON, OFFICE FOR PASTORAL SUPPORT AND OUTREACH OF THE ARCHDIOCESE OF BOSTON, JUNE CHIN, ROBERT H. ERICSON, DEBORA LAMONICA AND ANTHONY J. LAMONICA.**

66.   Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 65 of this complaint as if set forth in full herein. Each Defendant knew or should have known that the Archdiocese of Boston had a history of concealing the reporting of child sexual abuse to law enforcement authorities. Each Defendant intentionally decided to conceal and cover-up any information that would aid the Plaintiff to pursue a civil law suit against Father Albert Stankard. Each Defendant intentionally did not disclose relevant facts to the Plaintiff, to induce the Plaintiff to take no further action against Defendants, and to minimize any scandal.

## COUNT V: CONSPIRACY TO CAUSE EMOTIONAL DISTRESS AND DEFRAUD

67.   Each Defendant entered into a conspiracy to defraud, cover-up and conceal from the public information regarding Father Albert Stankard.  It is a continuing conspiracy that is still in effect. The Defendants came to a meeting of the minds that they would keep all information about their knowledge of Albert Stankard's abuse of the Plaintiff and all information about the Holy See's involvement a secret. Each Defendant took wrongful acts pursuant to this conspiracy.

68.   As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## REQUESTS FOR RELIEF

Plaintiff prays for judgement against Defendants, and each of them, for non-economic and economic losses described herein and for Plaintiff's costs and disbursements. Plaintiff requests full disclosure of all records including but not limited to, minutes from meetings, full medical records and public records as pertaining to this complaint and all records withheld thus far by the Defendants.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

SHEILA PALLIS,

Pro Se Litigant

Sheila Pallis

Dated: 12-7-2011

## VERIFICATION

I, Sheila Pallis, do hereby declare that I have read the foregoing Complaint and know the contents thereof.  The same is true to my knowledge except to those matters that are alleged on information and belief; as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this _____ 7 ___ day of _December_ , 2011 in Barnstable County, Massachusetts.

_Sheila Pallis_

Sheila Pallis

_Dawn Marie St.Onge_ 12/7/11

DAWN MARIE ST. ONGE
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires December 21, 2012